IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY CHARLES LING, | ) | CASE NO. 1:25-cv-02272-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff Jeffrey Charles Ling ("Ling") seeks judicial review of the final decision of the

Commissioner of Social Security, denying his application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ")

applied proper legal standards, I recommend that the Commissioner's final decision denying

Ling's DIB application be affirmed.

## II.      Procedural History

Ling protectively filed for  DIB on August 20, 2023, alleging a disability onset date of

December 1, 2017. (Tr. 212). The claims were denied initially and on reconsideration. (Tr. 67,

79). Ling then requested a hearing before an ALJ. (Tr. 99-100). Ling, represented by counsel,

and a Vocational Expert ("VE") testified before an ALJ on September 27, 2024. (Tr. 35-67). At

the hearing, Ling moved to amend his alleged onset date to January 1, 2020. (Tr. 63-65). On

October 15, 2024 the ALJ issued a written decision finding Ling not disabled. (Tr. 14-30). The

Appeals Council denied his request for review on August 25, 2025, making the hearing decision

1

the final decision of the Commissioner. (Tr. 1-6; see 20 C.F.R. §§ 404.955, 404.981). Ling

timely filed this action on October 22, 2025. (ECF Doc. 1). He asserts one assignment of error:

> The ALJ's residual functional capacity finding is unsupported by substantial evidence. The ALJ failed to evaluate Plaintiff's allegations pursuant to 20 C.F.R. § 404.1563 and SSR 16-3p. The ALJ failed to follow SSR 96-8p and build an accurate and logical bridge from the evidence and the ability to perform a range of medium work.

### III.  Evidence

#### A.  Personal, Educational, and Vocational Evidence

Ling was born on September 11, 1963. (Tr. 28). He was 58 years old on the date last

insured, making him an individual of advanced age according to agency regulations. (*Id.*). He has

at least a high school education. (*Id.*). He has past relevant work as a customer service

representative, DOT 179.357-054, SVP 3, light exertional level, and as a sign installer, DOT

869.684-054, SVP 3, heavy exertional level. (*Id.*).

#### B.  Relevant Medical Evidence

On November 4, 2019 Ling attended an office visit with Neil Mangat, M.D., complaining

of occasional back pain and vertigo. (Tr. 357). Ling reported dizziness that had been ongoing for

two years, occurring occasionally and lasting for up to five days. (*Id.*). He also reported recurrent

lumbar spine pain, with the current episode lasting more than a year. (*Id.*). Ling was assessed

with stable essential hypertension; vertigo; and chronic low back pain without sciatica,

unspecified back pain laterality. (Tr. 358-59).

Ling presented to the Mansfield Hospital Emergency Department on January 1, 2020,

with acute onset chest pain, shortness of breath and tachycardia palpitation that had been

ongoing for a week. (Tr. 428). A CTA of the pulomary artery showed no pulmonary embolus

within the main, lobar or evaluable portions of the segmental pulmonary arteries. (Tr. 432). A

chest x-ray revealed borderline cardiomegaly, mild pulmonary vascular congestion and a

questionable lucency through the region of the right inferior glenoid of uncertain significance. (*Id.*). He was assessed with chest pain, unspecified type and tachycardia. (Tr. 433). Ling left against medical advice. (*Id.*).

Ling returned to the Emergency Department on January 2, 2020, and stated that after going home the day before he had again experienced chest pain and measured his pulse at 130 beats per minute. (Tr. 464). He further complained of epigastric pain across the top of his stomach that was radiating to his left chest. (*Id.*). The clinical impression was sinus tachycardia. (Tr. 468). He expressed that he needed to leave the hospital again because he was his father's primary caregiver, and his father could not be left alone. (Tr. 475). He showed an abnormal exercise myocardial perfusion on a treadmill test (Tr. 482), although his echocardiography exam showed normal left ventricular size and ventricular function with an LVEF of 60 to 65 percent, grossly normal right ventricular size and systolic function, mildly thickened mitral valve leaflets with no definitive evidence of mitral valve prolapse and mild mitral regurgitation, and no pericardial effusion. (Tr. 490). At a follow up visit with Dr. Mangat on January 8, 2020, he was assessed with coronary artery disease ("CAD") involving native coronary artery of native heart with angina pectoris, and gastroesophageal reflux disease ("GERD"). (Tr. 302). Dr. Mangat noted that Ling's nuclear stress test showed decreased uptake at rest consistent with an old myocardial infarction. (*Id.*).

Ling presented to Dr. Mangat again on May 4, 2020 for medication refill. (Tr. 306). His hypertension and hyperlipidemia were deemed to be controlled, and he was continued on his medication. (*Id.*). He did report occasional tightness in his chest that "comes and goes." (*Id.*). At a subsequent medication refill appointment on November 30, 2020, his assessment was expanded to include vertigo, which was considered stable with a meclizine prescription. (Tr. 315).

At a June 21, 2022 office visit with Dr. Mangat, Ling complained of worsening arthritis pain and stiffness without joint swelling or joint warmth. (Tr. 368). Ling explained that he was affected in his bilateral metacarpophalangeal ("MCP") joints, bilateral proximal interphalangeal ("PIP") joints, and his bilateral shoulders. (*Id.*). He indicated that he had found significant relief in the past from nonsteroidal anti-inflammatory drugs ("NSAID"). (*Id.*).

Ling was assessed at a June 14, 2023 office visit with anxiety, hyperlipidemia, nasal congestion, essential hypertension, GERD, vertigo, chronic low back pain without sciatica, adhesive capsulitis of the left shoulder, and chronic pain of both knees. (Tr. 395). A left shoulder x-ray performed on June 20, 2023 revealed no aucte osseous abnormality, but at least moderate glenohumeral joint osteoarthritis. (Tr. 399). He received a left shoulder joint cortisone injection on June 23, 2023 to achieve pain control. (Tr. 401). Ling had another left shoulder x-ray on April 10, 2024, which showed severe glenohumeral and mild acromioclavicular joint osteoarthritis. (Tr. 639). He indicated that he had shooting pain all over his shoulder, and the symptoms were aggravated by reaching overhead or behind. (Tr. 637). He indicated that he had experienced two months of relief from his cortisone injection, but now he was having intermittent numbness and tingling into his fingers, and his range of motion was limited. (Tr. 637-38).

On May 28, 2024, Ling presented to Scott Justin Varga, M.D., with the OhioHealth Neurological Partners, with dizziness, headaches, memory loss and asymmetrical sensorineural hearing loss. (Tr. 595). He reported a history of traumatic brain injuries, most recently in 2016, and he was now suffering from chronic vertigo. (*Id.*). Dr. Varga treated Ling's condition as a post-concussive type pathology, and recommended massage therapy and a medication switch to notriptyline. (*Id.*).

4

In June, 2024, Ling attended physical therapy to treat arthritis of the left shoulder, left shoulder pain and a disorder of the left rotator cuff. (Tr. 653-68). A left shoulder MRI administered on July 24, 2024 showed severe end-stage glenohumeral joint arthritis, and a small subcentimeter moderate to high-grade partial-thickness tear of the subscapularis tendon insertion. (Tr. 639-40). On August 6, 2024, Ling presented for another steroid injection, and rated his pain as five out of ten before the injection. (Tr. 637).

### C. Medical Opinion Evidence

#### I. State Agency Reviewing Opinion Evidence

On January 4, 2024, state agency reviewing physician Gary Hinzman, M.D., determined that there was insufficient evidence in the record for him to fully assess the severity of Ling's alleged impairments. (Tr. 70-71). State agency reviewing physician Steve McKee, M.D., also found that the evidence was insufficient to assess Ling's alleged impairments on March 8, 2024. (Tr. 75-76).

### D. Administrative Hearing Evidence

Ling testified before an ALJ on September 27, 2024. (Tr. 42-56). Ling testified that he had not worked since 2017. (Tr. 42). He had a high school diploma and completed one year of college. (Tr. 44). He stated that he had been experiencing vertigo symptoms since before his mother died in November 2017. (Tr. 45). The symptoms grew more severe in 2018, so he was referred for "vertigo therapy," which has continued through this year. (*Id.*). He also reported severe arthritis in his shoulder that has been diagnosed as frozen shoulder. (*Id.*). Although he has had shoulder pain since 2018, he has only recently learned that he has a tear in the shoulder. (Tr. 46).

5

Ling stated that he becomes dizzy if he is looking at a computer screen for too long, or if he changes positions from standing, sitting, or kneeling. (*Id.*). He put off his own medical care while acting as his father's caregiver until his father died in 2023. (Tr. 46-47). Caring for his father involved bathing him, doing his laundry, preparing his meals and taking him to doctor's appointments. (Tr. 47).

Ling testified that he went to the hospital in 2020, where they administered a complete heart test that showed his heart "skips a beat every once in a while." (Tr. 48). They were able to control his heart issues and high blood pressure with medication, but he still experiences dizziness. (Tr. 48-49). His vertigo comes and goes, and the medication only works some of the time, and often does not last for very long. (Tr. 49). He saw an ENT for his vertigo, and was found to have some hearing loss in one ear, although that was not determined to be the cause of the vertigo. (*Id.*). He was sent to a neurosurgeon who felt the vertigo was likely a result of his history of multiple concussions. (*Id.*).

Ling added that since 2022 he has had issues with fatigue as well as occasional chest pain. (Tr. 50). Sometimes he will have to sit or lie down because of his dizziness. (*Id.*). Ling has also had lower back pain since fracturing a vertebrae in 2006, and he also has arthritis pain in his finger and knee joints. (Tr. 51). He sometimes experiences an elevated heart rhythm. (Tr. 53). He has difficulty reaching overhead with his left arm due to shoulder pain since at least 2017. (Tr. 54). He also is limited in reaching to the side or in front. (*Id.*). Because he is limited in lifting and carryng objects with his left arm, he only really does so with his right arm. (Tr. 55).

Once Ling completed his testimony, VE Kathleen Byrnes testified. (Tr. 56-63). The VE classified Ling's past work as a composite job comprised of customer service representative,

DOT 279.357-054, SVP of 3, with a light physical demand level, and sign installer, DOT 869.684-054, SVP of 3, with a heavy physical demand level. (Tr. 58).

For her first hypothetical, the ALJ asked the VE to assume an individual of Ling's age, education and past work experience who can perform work at the medium exertional level but with limitations including no climbing of ladders, ropes, or scaffolds, and avoiding exposure to all hazards, including unprotected heights and machinery with moving mechanical parts. (*Id.*). The VE opined that this individual would be unable to perform Ling's past work, but could work as a machine packager, DOT 920.685-078, SVP of 2, medium physical demand level, with an estimated 83,000 jobs in the national economy; as an assembler, motor vehicle, DOT 806.684-010, SVP of 2, medium physical demand level, with an estimated 239,000 jobs in the national economy; and as a food service worker, DOT 319.677-014, SVP of 2, medium physical demand level, with an estimated 42,000 jobs om the national economy. (Tr. 58-59).

For her second hypothetical, the ALJ asked the VE to consider all of the same circumstances of the first hypothetical, but with the additional limitation that the individual could only occasionally reach in all directions with the left upper extremity. (Tr. 59). The VE opined that there would be no jobs that this individual could perform in the national economy. (*Id.*). For her third hypothetical, the ALJ asked the VE to consider the same individual as in her second hypothetical, except that this individual would be limited to the light physical demand level. (Tr. 60). The VE testified she would be unable to find any jobs for this individual. (*Id.*).

For her fourth hypothetical, the ALJ asked the VE to consider again the individual from the first hypothetical, except that this individual would be reduced to the light exertional level. (*Id.*). The VE opined that this individual could perform jobs such as a cashier, II, DOT 211.462-010, SVP of 2, light physical demand level, with an estimated 457,000 jobs in the national

economy; as a merchandise marker, DOT 209.587-034, SVP of 2, light physical demand level, with an estimated 163,000 jobs in the national economy; and as a sales attendant, DOT 299.677-010, SVP of 2, light physical demand level, with an estimated 147,000 jobs in the national economy. (*Id.*).

If, for a fifth hypothetical, the VE were to consider all of the circumstances of the second hypothetical, except that the individual was limited to frequent reaching in all directions with the left upper extremity, that individual could perform the jobs of machine packager, assembler, motor vehicle, and food service worker from the first hypothetical. (Tr. 60-61). If this individual were limited to the light physical demand level, they could perform the jobs of cashier II, merchandise marker and sales attendant noted above. (Tr. 61). Under questioning from Ling's attorney the VE opined that if the individual from the first hypothetical required a sit/stand option, the medium jobs would be ruled out, although light and sedentary jobs would remain. (Tr. 62-63).

After the testimony concluded, Ling moved to amend the alleged onset date to January 1, 2020. (Tr. 65).

## IV. The ALJ's Decision

In her decision dated September 10, 2024, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of January 1, 2020 through his date last insured of March 31, 2022 (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Hypertension, Gatrroesophageal Reflux Disease, Tachycardia, Atherosclerotic Heart Disease, Coronary Artery Disease, Vertigo, Obeisty, and Left Shoulder Osteoarthritis (20 CFR 404.1520(c)).

8

4.  Through the date last insured, the claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except that he should avoid climbing ladders, ropes, or scaffolds; he should avoid exposure to hazards, including unprotected heights and machinery with moving mechanical parts; and he could frequently reach with the left upper extremity.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 11, 1963, and was 58 years old, which is defined as an individual of advanced age, on the date last insured. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skill (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a,).

11.  The claimant was not under a disability, as defined in the Social Security Act, from January 1, 2020, the amended alleged onset date, through the date last insured (20 CFR 404.1520(g)).

(Tr. 14-29).

## V.  Law and Analysis

### A.  Standard for Disability

9

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1. whether the claimant is engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or combination of impairments;

3. if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. if not, whether the claimant can perform their past relevant work in light of his RFC; and

5. if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

**B.      Standard of Review**

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.     Discussion

Although presented as a single issue, Ling presents two distinct issues for this Court's review:

1. Whether the ALJ supported her RFC determination with substantial evidence and created a logical bridge from the evidence to her finding.

2. Whether the ALJ complied with Social Security Rulings 16-3p and 96-8p when evaluating Ling's subjective complaints.

## A. The ALJ's RFC determination was supported by substantial evidence.

Ling argues that the ALJ provided only conclusory, boilerplate findings in support of the RFC and did not provide a logical and accurate bridge between the evidence and the RFC determination. (ECF Doc. 7, p. 21). Specifically, Ling contends that the ALJ did not explain how the evidence supports the RFC determination that Ling is capable of lifting and/or carrying weights consistent with the medium exertional level. (Tr. 21). He adds that the ALJ did not articulate how he could perform work without any additional postural limitations to account for his vertigo diagnosis, or manipulative limitations owing to left shoulder impairment. (*Id.* at pp. 21-23). Ling further argues that the ALJ made reference to the evidence in the record being consistent with the opinion evidence and prior administrative medical findings ("PAMFs") when there are no medical opinions contained in the record. (*Id.* at p. 22). Ling claims that the ALJ relied on her own lay opinion to formulate the RFC, as there were no medical experts that determined there was sufficient evidence in the record to develop an opinion. (*Id.* at pp. 22-23).

The Commissioner responds that the ALJ's RFC determination was supported by substantial evidence. (ECF Doc. 8, p. 6). The Commissioner notes that the ALJ found the PAMFs unpersuasive in that the PAMFs suggested there was insufficient evidence in the record from which to form an opinion. (*Id.*). The ALJ justified the finding that the PAMFs were unpersuasive by pointing to evidence in the record of diagnosis and treatment of multiple severe

12

impairments that provided ample support for the RFC determination. (*Id.* at pp. 6-9). Further, the Commissioner avers, the ALJ did not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. (*Id.* at p. 9, *citing Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009).

Before proceeding to Step Four of the sequential analysis, the ALJ is required to assess the claimant's RFC. 20 C.F.R. § 404.1520(e). The RFC is an assessment of a claimant's ability to work despite his impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996)). An ALJ must consider all relevant evidence in the case record, including a claimant's severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a).

This Court's review of the ALJ's decision is "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Napier v. Comm'r of Soc. Sec.* 127 F.4th 1000, 1004 (6th Cir. 2025) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance," (*Id.*); it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019). As long as the ALJ's findings are supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693, F.3d 709, 714 (6th Cir. 2012).

Here, the ALJ carried her burden of providing substantial evidence in support of her RFC determination. The ALJ noted several instances within the record where examination notes

13

indicated normal findings, including an emergency department visit from January 1, 2020 which revealed normal findings, "including normal cardiovascular, musculoskeletal, neurological, and psychiatric findings" (Tr. 23, *citing* Tr. 430), and another emergency department visit from the next day where he was "noted to be obese, tachycardia was present, and a murmur was noted; otherwise, his physical examination findings were normal, including normal pulmonary, musculoskeletal, neurological, and psychiatric findings." (*Id.*, *citing* Tr. 466). The ALJ further noted that primary care treatment visits throughout 2020 and 2021 "regularly revealed grossly normal findings, including normal cardiovascular, musculoskeletal, neurological, and psychological findings, except a heart murmur was noted on June 28, 2021." (*Id.*, *citing* Tr. 302-30). The ALJ wrote that these mostly benign findings "support[] limiting the claimant to performing work at the medium level of exertion." (*Id.*).

A June 14, 2023 physical examination revealed normal cardiovascular, musculoskeletal, neurological and psychiatric findings (*Id.*, *citing* Tr. 393), and an x-ray examination revealed evidence of at least moderate glenohueral joint osteoarthritis (*Id.*, *citing* Tr. 399). Examination notes from a June 23, 2023 follow-up appointment showed tenderness in the glenohumeral joint anteriorly, "but no swelling, redness, or deformity was noted." (*Id.*, *citing* Tr. 404). Noting that Ling's left shoulder was treated with a cortisone injection, the ALJ wrote that the evidence concerning his left shoulder "supported the reaching limitations found within the above-stated RFC." (*Id.*).

The ALJ also noted that Ling attended a neurological consultation on May 28, 2024, and the physical examination revealed grossly normal findings, including normal motor strength bilaterally and a normal gait, and indicated he was treated conservatively with prescribed

14

medication. (*Id.*, at pp. 23-24, *citing* Tr. 597-602). The ALJ cited this appointment as support for the environmental limitatons in the RFC. (*Id.*, at p. 24).

Finally, the ALJ wrote:

> Regarding the claimant's remaining exertional capacity, the physical limitations found within above stated RFC are adopted based on a review of the above-summarized evidence, and said limitations address the claimant's limitations or restrictions of physical strength, and/or finds his remaining ability to perform each of the 7 strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. In this regard, the undersigned notes that the above-discussed summary of the claimant's medical treatment for his severe impairments regularly documents normal and grossly normal physical examination findings, which support the finding that the claimant retains the ability to perform work activity at the medium level of exertion, consistent with the limitations found within the above-stated RFC. Specifically, the undersigned finds that the physical limitations found within the above-stated RFC adequately account for and accommodate the functional limitations resulting from the claimant's severe physical impairments by limiting the nature of the claimant's work activities, as stated therein, due to the limiting effects of the symptoms associated with his severe impairments.

(Tr. 26).

The above shows that the ALJ explicitly articulated her reasoning for her RFC determination, citing directly to evidence in the record that supported her findings. Ling points to other evidence in the record he claims offers support for the notion that greater limitations were justified in the RFC. (ECF Doc. 7, pp. 15-19). But even if Ling can point to substantial evidence supporting his conclusion, that alone does not entitle him to remand. *Stabler v. Comm'r of Soc. Sec.*, No. 1:25-cv-01329, 2026 WL 1194584, at *10 (N.D. Ohio May 1, 2026). Ling's onus is to show that the ALJ's conclusions are not supported by substantial evidence. *Jones,* 336 F.3d at 477. This is a burden he has not met.

As to Ling's claim that the ALJ relied on her lay opinion to formulate the RFC, I note that the RFC assessment requires an ALJ to walk a fine line. An ALJ must temper her duty to evaluate the medical and other evidence with the temptation to "play doctor" by substituting her

15

own medical judgment for that of medical professionals. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *accord Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006); *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("[A]n ALJ 'does not have the expertise to make medical judgments.'"). An ALJ might cross this fine line when she: (1) rejects a medical opinion without relying on other evidence or authority in the record; (2) interprets *raw medical data* (*e.g.*, uninterpreted x-rays and lab results); or (3) applies a sit-and-squirm test to assess a claimant's limitations based on observations at the hearing. *See*, *e.g.*, *Weaver v. Sec'y of Health and Hum. Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (discrediting sit-and-squirm jurisprudence and requiring an ALJ to cite evidence beyond personal observations); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.").

Nevertheless, the Sixth Circuit has "rejected the argument that an [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). The RFC determination "is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). And an ALJ does not err simply because her RFC finding is based on the objective medical evidence instead of a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base [his] RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability,

16

and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (quotation marks omitted)).

Here, the ALJ evaluated the PAMFs, which determined there was insufficient evidence in the file from which to form an opinion, and found those unpersuasive, citing to the substantial evidence in the file noted above. (Tr. 25). The ALJ did not reject a substantative medical opinion, interpret raw medical data, or apply a "sit-and-squirm" test when assessing Ling's RFC. Rather, she properly performed her administrative function of considering the objective medical evidence, and using that to determine Ling's functional capacity. The ALJ articulated the evidence upon which she based her finding, and built a logical and accurate bridge between the evidence and the RFC. As the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ" *Jones*, 336 F.3d at 477,I cannot recommend remand on this basis.

**B. The ALJ's evaluation of Ling's subjective allegations is supported ny substantial evidemce.**

Ling takes exception with the ALJ's finding that his subjective allegations were inconsistent with the evidence of record that the ALJ found supportive of her RFC determination. (ECF Doc. 7, pp. 12-13). In Ling's view, the ALJ's discussion of the evidence insufficiently explained how his left shoulder impairment, vertigo, and dizziness caused some limitaitons, but not the limitations he alleged. (*Id.* at p. 13). Ling claims the ALJ failed to articulate the evidence to support the specific reasons why his allegations were inconsistent with the record, and when the ALJ did discuss the evidence, she cited abnormal objective findings and other evidence that were consistent with Ling's subjective allegations. (*Id.* at pp. 14-15).

The Commissioner responds that the ALJ gave a "more than adequate" explanation of her consideration of Ling's subjective complaints, and the findings therefore must stand because it is

17

for the ALJ, rather than a reviewing court, to decide the consistency of Ling's statements against the evidence of record. (ECF Doc. 8, p. 12). The Commissioner contends that the ALJ's reference to conservative treatment for Ling's conditions are a valid reason for not crediting his subjective complaints, as the non-aggressive treatment is inconsistent with disabling pain. (*Id.* at p. 13). The Commissioner argues that the ALJ complied with SSR 96-8p by discussing the basis for the RFC finding, and citing the pertinent evidence in support of her determination. (*Id.* at p. 14). Regardless of Ling's disagreement with the ALJ's weighing, the Commissioner posits that the decision cannot be overturned because it is supported by substantial evidence. (*Id*. at p. 15).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d 234, 248 (6th Cir. 2007) (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the

individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio Apr. 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

In assessing Ling's subjective complaints, the ALJ gave appropriate consideration to the enumerated factors from SSR 16-3p including the location, duration, frequency and intensity of Ling's pain or other symptoms; they type and effectiveness of medications he takes: and treatment other than medication he has received for relief of his pain and other symptoms. (Tr. 23-24). Specifically, as noted above, the ALJ considered the location, frequency and intensity of Ling's symptoms, noting the generally normal cardiovascular, musculoskeletal, neurological and psychiathric findings noted throughout the record. (Tr. 22-24). The ALJ further addressed that Ling was prescribed medication to address his hypertension (Tr. 23), as well as his vertigo (Tr. 24). The ALJ wrote that Ling had attended physical therapy to treat his left shoulder impairment, and that he had also received injections. (Tr. 23-24).

Further, the ALJ's reliance on conservative treatment modalities to support the RFC was appropriate, as non-aggressive treatment can be substantial evidence that a condition is not disabling. *Stabler v. Comm'r of Soc. Sec.,* No. 1:25-cv-01329, 2026 WL 1194584, at *10 (N.D. Ohio May 1, 2026); *see also McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4, 215 F.3d 1327 (table) (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are

19

undermined by his non-aggressive treatment."). In sum, the ALJ clearly abided by the requirements of SSR 16-3p and supported her RFC determination with substantial evidence that built a bridge between the evidence and and her findings. Accordingly, remand is not recommended.

**Recommendation**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend the Commissioner's final decision denying Ling's application for DIB be affirmed.

Dated: August 6, 2026

Reuben J. Sheperd
United States Magistrate Judge

_____

**OBJECTIONS**

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\*\*\*

20

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019)

21